UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:12-CV-00019

**MIKE ALTMAN**                                                                                          **PLAINTIFF**

v.

**CBOCS, INC.,** *et al.*                                                                               **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Defendants' motion for summary judgment. (Defs.' Mot. Summ. J., Docket Number ("DN") 16.) The Plaintiff responded. (Pl.'s Resp., DN 23.) The Defendants replied. (Defs.' Reply, DN 24.) At the Court's request, each party filed a supplemental brief addressing the applicability of the Kentucky Supreme Court's decision in *Kentucky River Med. Ctr. v. McIntosh*, 319 S.W.3d 385 (Ky. 2010). Fully briefed, this matter is now ripe for adjudication. For all of the following reasons, the Defendants' motion is **DENIED**.

**I.**

At the time of the events giving rise to this action, Plaintiff Mike Altman ("Altman") was a graduate student at Murray State University studying for his Master's degree in History with a specialization in World War II military history. During his time at MSU, he lived in student housing located at 905 College Courts, Murray, Kentucky.

Sometime between 9:30am and 10:00am on the morning of February 8, 2011, Altman left his residence and walked approximately half a mile across campus to the Cracker Barrel Old Country Store located at 650 N. 12th Street, Murray, Kentucky, to eat breakfast. He ate there frequently. To reach the restaurant, Altman walked through 8- to 11-inch deep snow that had fallen on the area the previous evening. He walked in ruts left by cars and paths made by other pedestrians and was careful to avoid exposed concrete areas that were potentially slick and

1

hazardous. There is no question that he was aware of the snow in the area. It appears that he did not have any trouble with the conditions while walking across campus.[1]

Arriving at the restaurant, Altman crossed the north parking lot adjacent to the store and proceeded toward the entrance by walking under a covered porch attached to the front of the store. Upon entering the porch area, Altman's feet slipped from under him and he fell on the concrete surface, landing on his back and right shoulder. After a few minutes lying on the porch, Altman regained his footing and entered the store, where he informed a worker that he had fallen and was in pain. One of the store's employees took Altman to the hospital, and he was diagnosed with a fracture in the humerus bone in the top of his right arm. Although he initially only wore a stabilizing sling on the arm, the injury eventually required corrective surgery. Post-surgery, Altman complains of a limited range of motion, diminished strength, and continuing pain in his right should as a result of the fall. He claims his fall was caused by snow and ice on the porch, which the Defendant had a duty to protect him from and failed to do so.

The Cracker Barrel restaurant at issue opened at 6:00am on the morning of February 8, 2011. Altman called that morning to ensure that the store was open before he walked across campus. Debora Maze, the store's then-general manager, was on duty that morning. As manager, she was responsible for ensuring that the store's entrance was clear of hazards like snow and ice and was generally safe and accessible for the restaurant's patrons. In her deposition testimony, Maze recalled that Murray experienced heavy snowfall on the previous evening and that on the morning of Altman's accident she directed one of the store's maintenance workers to shovel the snow off the porch and to spread salt on the cleared areas in order to

---

[1] Statements in the record indicate Altman may have fallen on campus or at some other location prior to arriving at the restaurant. The Defendants have not cited to this evidence in support of their motion for summary judgment (possibly because it may be in the form of inadmissible hearsay), and the Court does not rely on it in ruling upon the motion.

2

prevent refreezing. She inspected the porch after the maintenance worker finished clearing the area and found it to be in a good condition. If the porch had not passed inspection, she would have required the worker to shovel and salt it again, and she only recalls requesting the worker clear the porch once.

Photographs of the porch were taken sometime after Altman's fall. The photographs show snow and ice on the left- and right-hand sides of an aisle that traverses the porch and runs parallel to the store's front. The area where Altman fell is also generally clear, although small patches of snow and ice are scatter throughout and other dark patches are present, suggesting the presence of moisture. Salt is also visible on the porch. Altman contends that his fall was caused by one of the patches of snow and ice that was not cleared in the removal process.

The Defendants now move for summary judgment on two grounds. First, they contend that under Kentucky law they had no duty to protect Altman from the danger presented by snow on the porch, which was a naturally occurring hazard that was open and obvious. Second, the Defendants claim that the decision to clear the porch did not conceal the snow or otherwise heighten Altman's risk of a slip and fall. In all, the Defendants argue that they had no duty to protect Altman from the hazard that was readily observable, cannot be held liable for his injuries, and are entitled to summary judgment.

## II.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

While the substantive law of Kentucky is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993) (abrogated on other grounds in *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010)).

### III.

A standard negligence action in Kentucky requires that the plaintiff prove: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992) (citing *Illinois Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967)). Whether a duty exists is a question of law for the courts to decide. *See id.* at 248. In the context of premises liability, landowners generally have a

duty to exercise ordinary care to keep their premises in a reasonably safe condition and to protect invitees from dangerous conditions occurring on the premises. *See Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431, 432-33 (Ky. 2003) (citing Restatement (Second) of Torts § 323(3) (1965)). This rule is subject to certain exceptions discussed below.

**A.**

The first issue before the Court is whether the Defendants had a duty to protect Altman from the condition created by the patches of snow and ice on the porch. Resolution of this question turns largely on whether the snow and ice was "open and obvious." Prior to changes in premises liability law by the Kentucky Supreme Court in 2010, Kentucky law was "not generous to business invitees who suffer[ed] an injury as a result of a risk created by an obvious, outdoor natural condition such as ice." *Gaff v. Johnson Oil Co.*, 45 F. App'x. 499, 501 (6th Cir. 2002). The general rule was that "natural outdoor hazards which are as obvious to an invitee as to the owner of the premises do not constitute unreasonable risks to the former which the landowner has a duty to remove or warn against." *Standard Oil Co. v. Manis*, 433 S.W.2d 856, 858 (Ky. 1968) ("*Manis* rule"). Of course, the applicability of this bright-line rule turned upon whether the condition was open and obvious. If the condition was open and obvious, a landowner had no duty to protect, but if it was not open and obvious, then the landowner had a duty to use reasonable precautions to protect invitees from injury resulting from the condition.

In Kentucky, a danger is "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man in the position of the visitor exercising ordinary perception, intelligence, and judgment." *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 529 (Ky. 1969) (citations omitted). "Whether a natural hazard like ice or snow is obvious depends upon the unique facts of each case." *Schreiner v. Humana, Inc.*, 625 S.W.2d 580, 581 (Ky.

5

1981).

Upon consideration of the record in the present case, the Court finds that a genuine issue exists as to whether the snow and ice on the porch was an open and obvious danger. Altman's deposition testimony shows that he was generally aware of the snowy conditions in the area on the day of his accident. In fact, he walked half a mile through the snow in order to get to the Cracker Barrel. He was also aware of snow and ice in the restaurant's parking lot. The question before the Court is not whether the snow in the general area or in the parking lot was open and obvious, however. Rather, it is whether the patches of snow and ice on the porch where Altman fell were open and obvious. At his deposition, Altman was directly asked, "[D]o you know why you slipped on the Cracker Barrel porch?" (Altman Depo., DN 23-1, p. 37:8-9.) He responded, "No sir. It was just ice *that I didn't see*." (*Id.* at p. 37:10 (emphasis added).) Based on this testimony and other evidence in the record, the Court finds that there is a genuine dispute as to whether the snow and ice created an open and obvious danger. This finding renders summary judgment inappropriate.

In arriving at the above-stated conclusion, the Court was guided in substantial part by the decisions in *Schreiner v. Humana, Inc.*, 625 S.W.2d 580 (Ky. 1981) and *Estep v. B.F. Saul Real Estate Inv. Trust*, 843 S.W.2d 911 (Ky. App. 1992). In the first case, the plaintiff slipped and fell on an icy walkway while trying to enter a doctor's office. *Schreiner*, 625 S.W.2d at 580. Snow had previously been removed from the walkway, and Schreiner testified that the walkway looked "perfectly clear" to her and that she did not see the ice prior to falling. *Id.* Based on Schreiner's testimony, the court found that the ice on the walkway was not an obvious hazard and that the *Manis* rule did not apply because the plaintiff's "knowledge of the icy condition was not in parity with [the business's] own". *Id.* at 581. The same is true for Altman in the present case.

6

Evidence shows that one of the Defendants' employees attempted to clear the porch of snow and ice sometime prior to Altman's arrival. Despite the employee's efforts, photographs of the porch show patches of snow and ice in the aisle customers used to reach the restaurant's entrance. Altman testified that he did not see the snow or ice prior to his fall. Accordingly, the Court cannot say that the condition created by the snow and ice was open and obvious.

The present case is also similar to *Estep*, in which the plaintiff slipped and fell on an icy sidewalk while trying to enter a shopping mall. The plaintiff fell in daylight and was generally aware of inclement weather conditions in the area. *Estep*, 843 S.W.2d at 912. The sidewalk on which the plaintiff slipped and fell appeared to have been cleared except for a "thin skiff" of snow that had recently fallen. *Id.* This thin coating of snow concealed ice that had not been removed from the sidewalk and that could not be readily observed by Estep. The court declined to apply the *Manis* rule, and summary judgment was inappropriate, because "there [was] a genuine issue of fact relating to the parties [sic] knowledge of the ice . . . ." *Id.* at 914. In addition to finding a genuine issue as to obviousness, the court placed emphasis on the fact that the defendants or their agent had attempted to remove the snow and ice. *Id.* The court acknowledged the *Manis* rule but found that "when an owner chooses to remove ice and snow, he must act reasonably[.] The question of whether they acted reasonably is a classic jury question, which precludes summary judgment." *Id.* at 914-15. Like *Estep*, there is a genuine issue regarding Altman's knowledge of the snow and ice on the porch at the time of his fall. Additionally, where the Defendants attempted to remove the snow and ice, *Estep* is clear that they had to act reasonably in doing so and that this is a "classic jury question, which precludes summary judgment."

In all, the Court finds that there is a genuine dispute as to whether the snow and ice on the

porch at the time of Altman's fall was open and obvious.  Additionally, where the Defendants attempted to remove the snow and ice, they must have acted reasonably in doing so, and the question of reasonableness is one for the trier of fact, not the Court, to decide.

## B.

Even if the Court found that the condition created by the snow and ice was an open and obvious danger, summary judgment would still be inappropriate in light of the Kentucky Supreme Court's decision in *Kentucky River Med. Ctr. v. McIntosh*, 319 S.W.3d 385 (Ky. 2010).[2] Before *McIntosh*, the issue of an open and obvious danger was a question of law by which courts determined whether a defendant had a duty to warn or protect an invitee from a condition on the premises.  If found to be open and obvious, the landowner was absolved of any duty to warn or protect his invitees from the condition under the theory that both parties have equal knowledge when the danger is "truly open and obvious." *Id.* at 390.  Because the landowner had no duty, he could not be liable for any injuries resulting from the open and obvious condition.  After *McIntosh*, however, "lower courts should not merely label a danger as 'obvious' and then deny recovery.  Rather, they must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger." *Id.* at 392.  Where "the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions to prevent the injury, he can be held

---

[2]    Although *McIntosh* did not involve an open and obvious danger resulting from a naturally occurring outdoor condition, such as snow and ice, courts of this district have applied *McIntosh*'s reasoning to such circumstances.  *See e.g.*, *Garrity v. Wal-Mart Stores E., Ltd. P'Ship*, No. 4:11-CV-00015-M, 2012 WL 6648717 (W.D. Ky. Dec. 20, 2012); *Props v. Mammoth Onyx Cave, Inc.*, No. 1:11-CV-00114-M, 2012 WL 4887436 (W.D. Ky. Oct. 15, 2012); *Lahutsky v. Wagner Moving & Storage, Inc.*, No. 5:10-CV-00007-R, 2011 WL 5597330 (W.D. Ky. Nov. 17, 2011).  Indeed, Justice Schroder, dissenting in *McIntosh*, predicted that *McIntosh* would alter the analysis in slip and fall cases involving snow and ice. *McIntosh*, 319 S.W.3d at 397 (Schroder, J., dissenting) ("Now, even though the alleged danger is open and obvious (like snow or ice on a sidewalk), if the possessor can anticipate the harm to an invitee, the possessor has a duty to fix the condition, or to somehow give additional warnings.").

In *Bruner v. Miami Mgmt. Co., Inc.*, No. 011-CA-000616-MR, 2012 WL 1484056, at *4 (Ky. Ct. App. Apr. 27, 2012), the Kentucky Court of Appeals recognized the defendant's argument that "*McIntosh* should be narrowly applied to its facts, i.e. when the danger is manmade, not when the danger is the result of a natural hazard."  The court went on to state, however, that it did "not read *McIntosh* that narrowly."  *Id.*  Accordingly, the Defendants' reliance on *Bruner* is unpersuasive.

liable." *Id.*

After holding that landowners can be liable for foreseeable injuries caused by open and obvious dangers against which they failed to take reasonable precautions, the Kentucky Supreme Court detailed three specific circumstances in which such injury is foreseeable. The first circumstance, and the one most at play in *McIntosh*, is where it is foreseeable that an invitee will be distracted from the danger despite its open and obvious nature. *Id.* at 393 (citing Restatement (Second) of Torts § 343A cmt. f (1965)). It was undisputed that McIntosh was aware of the curb she tripped over because she had transported more than 400 patients through the same emergency room entrance. *Id.* at 387. Despite this fact, her injury was foreseeable to the defendant hospital because of distractions associated with her job. *Id.* at 393. When rushing critically ill patients into the hospital, McIntosh was required to attend to their needs and could not watch her every step. *Id.* As a result, the hospital was under a duty to take reasonable precautions to prevent McIntosh's injuries in the face of the open and obvious danger. *Id.*

The second circumstance in which a landowner can be liable to an invitee for foreseeable injuries caused by an open and obvious danger is where "'the possessor has reason to expect that the invitee [] . . . will forget what he has discovered.'" *Id.* at 394 (quoting Restatement (Second) of Torts § 343A cmt. f (1965)). The evidence in *McIntosh* showed that the particular emergency room entrance at issue was different from all the other emergency room entrances used by McIntosh in the region. *Id.* Again the court found that the high-stress nature of McIntosh's job could cause her to forget that this particular emergency room entrance was different than the others, that the injury was foreseeable, and that the defendant hospital was required to take reasonable precautions to prevent the injury. *Id.*

Finally, the court found that injuries resulting from open and obvious dangers are

9

foreseeable where "'the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.'" *Id*. (quoting Restatement (Second) of Torts § 343A cmt. f (1965)). Applying this circumstance to the facts before it, the *McIntosh* Court found:

> Even if we assume that [McIntosh] was neither distracted nor forgetful about the curb, we would still have to conclude that the benefits of her rushing to the door (at the risk of tripping over the curb) outweighed the costs of her failing to do so (at the risk of the patient's conditioning worsening, perhaps to the point of death, on the [h]ospital doorstep).

*Id.* Where it is foreseeable to the landowner that the benefit of knowingly encountering the open and obvious danger outweighs the risk of doing so, the landowner must act reasonably to protect an invitee from injury. *Id.*

In the present case, the first two "foreseeability circumstances" described in *McIntosh* are not applicable. Assuming that the snow and ice was open and obvious, nothing in the record indicates that the Defendant should have foreseen that Altman would be distracted from it. In fact, he testified that he was particularly cautious during the walk from his residence to Cracker Barrel because of the recent, heavy snowfall. Likewise, Altman did not have an opportunity to forget the danger created by the condition. The facts of this case are different from *McIntosh*, where the plaintiff previously encountered the danger created by the raised curb on several prior occasions. Although Altman had been to the restaurant many times, the facts of this case show that the temporal nature of the snow and ice did not create a dangerous condition that he forgot. This foreseeability circumstance may have been applicable if he had encountered the snow and ice on the way into the store, eaten breakfast, and then slipped and fallen on his way out, but these are not the facts before the Court. Accordingly, even if the snow and ice was open and obvious, Altman's injuries were not foreseeable to the Defendant because of distraction or

10

forgetfulness.

The third foreseeability circumstance described in *McIntosh* – an invitee's injuries are foreseeable to a landowner where the benefit to the invitee of encountering the risk outweighs the costs of doing so – is applicable in this case and would preclude summary judgment even if the snow and ice was open and obvious. In other words, it was foreseeable to the Defendant that the benefit to invitees of encountering snow and ice on the porch outweighed the cost of doing so. On the date in question the Cracker Barrel opened for business at 6:00am, inviting patrons on to the premises for a business purpose. The benefit to the invitees of encountering the open and obvious danger was gaining entrance to the store where they could buy merchandise or order a meal. The cost of encountering the risk – injury resulting from a slip and fall – may (or may not) have been high, but the probability of it actually occurring was small.

The cost side of the cost/benefit analysis is the product of the potential injury and the probability of it occurring.[3] It is proper to consider the probability of the cost because the cost/benefit analysis is not conducted against the plaintiff to whom the cost actually accrued but instead asks whether a reasonable person in his circumstances would encounter the risk because the benefit of doing so would outweigh the costs. *See McIntosh*, 319 S.W.3d at 394 (citing Restatement (Second) of Torts § 343A cmt. f (1965)). The cost of encountering a risk may outweigh the benefit in at least three circumstances. First, when the probability of sustaining an injury increases then the costs may outweigh the benefit of encountering the risk. Second, the cost might outweigh the benefit where the resulting injury would be severe even if the probability of sustaining it is small. Finally, if the benefit received is slight, then the cost may overcome the benefit even if the cost and the probability of it occurring are small.

---

[3] Set in terms of a mathematical formula, an invitee's injuries are foreseeable to a land owner where the benefit of encountering the risk is greater than the cost of the risk multiplied by the probability of it occurring (Benefit > Cost * Probability).

11

In the present case, the Court finds that even if the snow and ice was an open and obvious condition, the Defendants had a duty to take reasonable precautions to protect Altman from it because it was foreseeable to the Defendants that the benefit of encountering the danger would outweigh the risk of doing so. Accordingly, the ultimate question is whether the Defendants acted reasonably in protecting Altman from injury. The Defendants, by shoveling snow and ice off of the porch and spreading salt on the premises, may very well have acted reasonably under the circumstances, but reasonableness is a question of fact for the jury that precludes summary judgment.

## IV.

In conclusion, the Court finds that there is a genuine dispute as to whether the snow and ice created an open and obvious danger on the premises of the Defendants' store. And even if open and obvious, under a *McIntosh* analysis the Defendants had a duty to use reasonable precautions to protect Altman from foreseeable injury. At a trial of this action, Altman bears the burden of proving that the Defendants did not act reasonably to protect him from injuries even if the condition created by the snow and ice was open and obvious.

## CONCLUSION

The Defendants moved the Court for summary judgment on the Plaintiff's claims. For all of the foregoing reasons, the Defendants' motion is **DENIED**.